UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIK STUCKMAN,<br>*Plaintiff,*<br><br>v.<br><br>NANCY A. BERRYHILL,<br>*Defendant.* | No. 3:17-cv-1921 (JAM) |

**RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Erik Stuckman asserts that he is disabled and unable to work due to severe headaches, hearing, balance, and mental health issues resulting from a surgery he underwent in 2013 to remove a brain tumor. He has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, who denied Stuckman's claim for supplemental security income. For the reasons discussed below, I will deny Stuckman's motion to remand the decision of the Commissioner (Doc. #18) and grant the Commissioner's motion for judgment on the pleadings (Doc. #19).

**BACKGROUND**

I refer to transcripts provided by the Commissioner. *See* Doc. #12-1 through Doc. #12-8. Stuckman filed an application for social security disability income on February 7, 2014, alleging a disability beginning on September 27, 2013. Doc. #12-3 at 40. Stuckman's claim was initially denied on May 5, 2014 and denied again upon reconsideration on November 13, 2014. He then filed a written request for a hearing on January 12, 2015. *Ibid.*

Stuckman appeared and testified at a hearing before Administrative Law Judge (ALJ) Ronald J. Thomas on April 25, 2016. *Ibid.* Stuckman was represented by counsel. On May

1

23, 2016, the ALJ issued a decision concluding that Stuckman was not disabled within the meaning of the Social Security Act. *Id.* at 37-50. The Appeals Council affirmed the decision of the ALJ on September 15, 2017. *Id.* at 2. Stuckman then filed this federal action on November 15, 2017. Doc. #1. In response, the Commissioner moved for judgment on the pleadings, asking this Court to affirm her decision. Doc. #19.

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether he qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called

"Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [he] has the residual functional capacity to perform [his] past work. Finally, if the claimant is unable to perform [his] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)–(v). In applying this framework, an ALJ can find a claimant to be disabled or not disabled at a particular step and can make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at steps one through four; at step five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ here concluded that Stuckman was not disabled within the meaning of the Social Security Act. At Step One, the ALJ determined based on Stuckman's employment history that he will meet the insured status requirement of the Social Security Act through December 31, 2019. Doc. #12-3 at 42. Stuckman has not engaged in substantial gainful activity since September 27, 2013, the date of the alleged onset of his disability. *Ibid.*

At Step Two, the ALJ found that Stuckman suffers from the following severe impairments: acoustic neuroma s/p retrosigmoid transtemporal resection, an affective disorder, and anxiety. *Ibid.*

At Step Three, the ALJ determined that Stuckman does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Doc. #12-3 at 41–42. The ALJ did

determine, however, that Stuckman had "mild restriction" in activities of daily living and "moderate difficulties" with social functioning and concentration, persistence, and pace. *Id.* at 43.

At Step Four, the ALJ found that Stuckman has "the residual functional capacity to perform light work as defined in 20 C.F.R. [§] 416.967(b)," but that he cannot be exposed to dangers such as heights and moving machinery and "must also avoid exposure to vibration, flashing lights or use of a computer screen for a duration beyond 15 minute at a time." Doc. #12-3 at 44. The ALJ also found that Stuckman can "understand, remember and carryout simple, routine, and repetitive tasks" but is "limited to only occasional contact with the general public, co-workers, and supervisors." *Id.* at 44–45. The ALJ found that Stuckman is unable to perform his past work as a fingerprint technician because the demands of that job "exceed the exertional and nonexertional limitations" of his RFC. *Id.* at 49.

In formulating Stuckman's residual functional capacity (RFC), the ALJ gave "little weight" to the opinion of treating physician Dr. Paul Schwartz and "only some weight" to the opinion of consultative examiner Chery Ellis, Psy.D. *Id.* at 48. The ALJ gave "great weight" to the opinions of state agency consultants Carl Bankoff, MD and Joseph Connolly Jr., MD. *Id.*; Doc. #12-4 at 2–25. The ALJ also found Stuckman's testimony about his symptoms to be only partially credible. Specifically, the ALJ found that "the documentary medical evidence does not support the level of limitation alleged." Doc. #12-3 at 46. The ALJ found that the medical evidence supports the *type* of symptoms Stuckman alleges but not the "intensity, persistence, and limiting effects" that Stuckman attributes to them. *Ibid.* In the absence of a medical source statement on Stuckman's ability to perform basic work activity, and having accorded only "little" and "some" weight to the opinions of the treating physician and consultative examiner,

4

respectively, the ALJ relied primarily on Stuckman's treatment records, including subjective complaints, clinical findings, and diagnostic testing, in reaching his RFC conclusion. *Id.* at 48.

At Step Five, after considering Stuckman's age, education, work experience, and RFC, the ALJ concluded that a job Stuckman can perform exists in significant numbers in the national economy. *Id.* at 49-50. The ALJ found that Stuckman would be able to "perform the requirements of a representative light, unskilled occupation such as a mail sorter." *Id.* at 50. The ALJ relied on the testimony of a vocational expert in arriving at this conclusion. The ALJ ultimately concluded that Stuckman was not disabled within the meaning of the Social Security Act. *Ibid.*

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Stuckman challenges the ALJ's opinion on three grounds. Doc. #18-2 at 17–28. First, Stuckman argues that the ALJ erred in not giving more weight to the opinion of Dr. Schwartz, Stuckman's treating physician. As part of this challenge to the ALJ's decision, Stuckman argues that the ALJ misinterpreted and misstated the record in reaching the conclusion that his condition

5

had improved since Dr. Schwartz last examined him in 2014. Second, Stuckman argues that the ALJ erred in not requesting a medical source statement from a treating physician regarding his capacity to perform basic work activities. Finally, Stuckman argues that his RFC as determined by the ALJ does not adequately take into account his problems concentrating and the effect that fluorescent lights have on his headaches.

### *The treating physician rule*

According to the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128 (citation omitted). Even if a treating physician's opinion is not given controlling weight, the ALJ must consider a number of factors to determine the proper weight to assign, including "the [l]ength of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Id.* at 129 (internal quotation marks and citations omitted) (alterations in original). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion. . . . Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* at 129–30; *see also* 20 C.F.R. § 416.927 ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

Stuckman claims that the ALJ violated the treating physician's rule when he accorded only little weight to Dr. Schwartz's opinion. Because this is intertwined with Stuckman's claim that the ALJ "misinterpreted and misstated the record" when he found that Stuckman's condition had improved since Dr. Schwartz wrote his opinion, doc. #18-2 at 26, I analyze the two claims together.

The ALJ clearly stated the weight he gave to Dr. Schwartz's opinion and comprehensively discussed his reason for according it little weight. Doc. #12-3 at 48. In the ALJ's assessment, Stuckman's condition had improved between 2014, when Dr. Schwartz wrote his opinion, and 2016, when the case came before the ALJ. The ALJ found that Schwartz's opinion provided "a mere snapshot" of Stuckman's ability to function at the time of the examination and was not an accurate portrayal of Stuckman's capacity at the time of the hearing. *Ibid.* The ALJ noted that at the time Dr. Schwartz opined that Stuckman was not ready to return to work, Stuckman was reporting "significant vertigo, resulting in difficulty balancing and an inability to drive." *Ibid.* As evidence that Stuckman's condition has improved since then, the ALJ cited records from a November 2015 medical examination indicating that Stuckman had "no dizziness" and a "normal gait." *Ibid;* Doc. #12-8 at 195–96. The ALJ also noted that as of the date of the hearing, Stuckman was able to drive himself and his children, and that Botox injections offer at least temporary relief from headaches. Doc. #12-3 at 45, 80; Doc. #18-2 at 19. Even if the relief is only temporary, as Stuckman has alleged, and the headaches are more intense and frequent after the treatment wears off, it was within the ALJ's permissible discretion to find that temporary relief is evidence of improvement.

As for the ALJ's assessment that Stuckman's condition had improved despite Stuckman's repeated assertions that it has not, it is the function of the ALJ, not this Court, to evaluate the

7

credibility of witnesses. *See, e.g, Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013). An ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*). The ALJ's decision to afford only "little weight" to Dr. Schwartz's opinion in light of changes in Stuckman's condition after Dr. Schwartz last examined him in 2014 is supported by substantial evidence.

My finding that substantial evidence supports the ALJ's decision is not based on the ALJ's use of Stuckman's attendance at doctor's appointments as evidence that his condition had improved. Doc. #12-3 at 46. In this regard, the ALJ's reasoning is flawed. The ALJ wrote, "[w]hile the claimant's complaints of consistent headaches are noted, there is no indication that the claimant has missed appointments due to headaches." *Ibid.* It does take some basic level of function to get to the doctor, but many seriously ill people go to the doctor. Compliance with a treatment regime, even and perhaps especially an intensive one, should not serve as material evidence that a claimant's condition has improved. Finding otherwise would create perverse incentives for patients not to comply with the treatment regimens that their doctors recommend.

### *Medical source statement*

It is well established that "[t]he ALJ, unlike a judge in a trial, must [himself] affirmatively develop the record," considering "the essentially non-adversarial nature of a benefits proceeding." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ has a duty "to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). This duty arises from the Commissioner's regulatory duty to develop a complete medical record before making a disability determination, 20 C.F.R. § 404.1512(d)–(f), and exists even when, as here, the

8

claimant is represented by counsel at the administrative hearing. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); *see also Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 537 (S.D.N.Y. 2015). Of course, the duty to develop the record is not limitless. A medical source statement is not necessarily required, "so long as the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (internal quotations omitted); *see also Pellam v. Astrue*, 508 F. App'x at 90 (ALJ not under an obligation to further develop the record where it already contained a partially relied-upon opinion from a consultative examiner and the treatment notes from the plaintiff's doctors).

The ALJ did not err when he did not seek a medical source statement. While the ALJ accorded Dr. Schwartz's opinion little weight and Dr. Ellis's opinion only some weight, the record before the ALJ included these doctors' treatment notes, along with the opinions of two consulting examiners to which the ALJ assigned "great weight," hundreds of pages of medical records including treatment notes, clinical findings, and diagnostic testing, and testimony from Stuckman about his daily life and the types of activities in which he was able to engage. Doc. #12-3 at 48–49. The record that the ALJ considered contained enough evidence for him to assess Stuckman's residual capacity such that the lack of a medical source statement is not grounds for remand.

### *Substantial evidence for the RFC finding*

It is well established that a calculation of RFC must be based on the medical record and not on the ALJ's lay opinion. *See Burgess*, 537 F.3d at 131. In calculating the RFC, "an ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec.*

9

*Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*). The ALJ's RFC determination must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8, 1996 WL 374184 (1996). The RFC finding "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *McIntyre*, 758 F.3d at 150 (internal quotation marks and citation omitted).

Stuckman argues that the ALJ erred in finding that he could work as a mail sorter because mail sorters are exposed to fluorescent lights. Doc. #18-2 at 28–29. The Court interprets this as an argument that the ALJ erred in not including a limitation on exposure to fluorescent lights in his RFC. The only basis for this proposed limitation was Stuckman's testimony, and the ALJ expressly concluded that "[t]he undersigned is not persuaded by the claimant's statements concerning his impairments or the impact those impairments have on his ability to work." Doc. #12-3 at 49. Stuckman testified at the hearing that exposure to fluorescent lights triggers his headaches. *Id.* at 71 ("Fluorescent lights are bad. That's one of the worst things."). But he has not identified medical evidence in the record to support this assertion, and an ALJ is not required to accept everything a claimant alleges as true. *See Lewis v. Colvin,* 548 F. App'x 675, 678 (2d Cir. 2013) (ALJ was justified in discrediting a plaintiff's testimony regarding his symptoms when such testimony "was not supported by the objective medical evidence or evidence regarding his daily activity as set forth in the ALJ's opinion and supported by the record"). ALJs have the authority to make credibility assessments, *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*), and to resolve discrepancies between the medical evidence and a claimant's testimony, *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389,

399 (1971)). The ALJ did not err by not including restrictions on exposure to fluorescent lights in Stuckman's RFC.

Stuckman also argues that the case should be remanded "so that the ALJ can formulate an RFC description with Mr. Stuckman's poor concentration." Doc. #18-2 at 28. Stuckman relies heavily on a portion of the opinion of Cheryl Ellis, Psy. D., who wrote that his "concentration and persistence appear to be adequate with some confusion, which may manifest as poor concentration as he may have some trouble encoding new information." Doc. #12-8 at 114. Ellis's opinion is not as unequivocal as Stuckman suggests: Earlier in the same opinion, Ellis wrote that Stuckman's "[c]oncentration appears to be good." *Id.* at 113. Nor is it controlling. The ALJ clearly stated his reason for giving only some weight to Ellis's opinion. Doc. #12-3 at 48. And the ALJ was free to rely on other evidence in developing an RFC, such as medical records stating that "Attention/Concentration: Good able to focus on tasks and organize/prioritize daily activities." Doc. #12-8 at 179. I conclude that substantial evidence supported the ALJ's finding that Stuckman "can understand, remember, and carryout simple, routine and repetitive tasks" and that his "time off task will correspond with normal break during the workday." Doc. #12-3 at 44–45.

## CONCLUSION

For the foregoing reasons, the motion to reverse the decision of the Commissioner (Doc. #18) is DENIED, and the Commissioner's motion for judgment on the pleadings

(Doc. #19) is GRANTED. The Clerk of Court shall close the case.

It is so ordered.

Dated at New Haven this 4th day of January 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge